UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

TRENT YOUNG,

          Plaintiff,              Case No. 2:21-cv-96

v.                                    Hon. Hala Y. Jarbou

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

          Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I. Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Kent County Correctional Facility in Grand Rapids, Michigan. The events about which he complains, however, occurred at the Kinross Correctional Facility (KCF) in Kincheloe,

Chippewa County, Michigan. Plaintiff sues the Michigan Department of Corrections (MDOC), Prisoner Counselor J. Massey, Mail Room Staff Kirt Mahar, Corrections Officer Unknown Gillett, Lieutenant Unknown Davidson, Captain Unknown Johnson, Corrections Officer Unknown Parish, Sergeant Unknown Pulfrey, Corrections Officer Unknown Rajacic, Inspector Unknown Party, Litigation Coordinator David Mastaw, and Lieutenant Justin Frazier.

Plaintiff alleges that on March 19, 2020, he gave Defendant Massey legal mail to be sent out in an expedited manner. On April 14, 2020, Plaintiff's legal mail was returned to him. Plaintiff noticed that the address had been altered by someone, so that it was not sent to the correct address. Plaintiff filed a grievance. On May 5, 2020, Defendant McBride reviewed the grievance with Plaintiff, but dismissed Plaintiff's assertion that his mail had been tampered with.

On April 20, 2020, Plaintiff's incoming mail was searched by Defendant Gillett, who discovered a thumb drive sent by an attorney in a civil case that Plaintiff was pursuing in *pro per*. Defendant Gillett took the thumb drive and Plaintiff's mail to his supervisor for instructions regarding the handling of the mail. Defendant Davidson subsequently kept the thumb drive, but returned Plaintiff's mail. Plaintiff explained that his legal mail was protected, and that the contents of the thumb drive were the subject of a stipulated confidentiality and protective order issued by the Court.

Later that night, Plaintiff was called back to the control center to sign a contraband removal slip. Plaintiff noticed that the officer had a copy of the legal mail he had received earlier that day. When Plaintiff asked, he was told that Defendant Gillett had made a copy of his mail. Plaintiff filed a grievance. On April 23, 2020, Defendant Davidson told Plaintiff that his mail had been copied so that Plaintiff could keep a copy. Plaintiff complained that prison policy did not allow officials to make copies of legal mail without permission.

On June 25, 2020, Defendant Parish inspected Plaintiff's incoming mail and confiscated a few pages that had been highlighted, stating that they would have to be copied and the originals shredded. Plaintiff asked to speak to a sergeant. Shortly thereafter, Plaintiff spoke to Defendant Pulfrey, who told Plaintiff that if he did not allow the pages to be copied, he could not have his legal mail. On July 6, 2020, Defendant Rajacic told Plaintiff that the original pages had been shredded, but that Plaintiff could have the copies. Plaintiff was told the same thing by the sergeant after he complained that he had never had an administrative hearing on the issue. Plaintiff refused the copies.

On July 9, 2020, Plaintiff had an administrative hearing with Defendant Massey regarding the issues with his legal mail. Plaintiff reiterated his complaints. On July 15, 2020, Defendant Mastaw attempted to give Plaintiff the copies of his legal mail, telling Plaintiff he did not know where the originals were. Plaintiff told him that it was not his property, that Defendant Rajacic had made the copies and shredded the originals without giving Plaintiff a hearing. On July 20, 2020, Defendant Frazier gave Plaintiff a hearing and told him that he was making a lot of people angry. Defendant Frazier told Plaintiff that he should sign off on the matter and take his mail. Plaintiff refused. On July 20, 2020, Grievance Officer McBride interviewed Plaintiff, who explained what had happened.

Plaintiff states that Defendants violated his rights under the First, Fourth, and Fourteenth Amendments. Plaintiff seeks damages.

II. **Failure to state a claim**

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include

3

more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

III.  **Eleventh Amendment**

Plaintiff may not maintain a § 1983 action against the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh

4

Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See*, *e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010). In addition, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison*, 722 F.3d at 771. Therefore, the Court dismisses the MDOC.

IV. **Lack of allegations as to Defendants Mahar, Johnson, and Inspector Unknown Party**

Plaintiff's allegations are insufficient to state a claim against Defendants Mahar, Johnson, and Inspector Unknown Party. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of

5

specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."). Plaintiff fails to even mention Defendants Mahar, Johnson, and Inspector Unknown Party in the body of his complaint. His allegations fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

V.     **Fourth Amendment**

Plaintiff contends that Defendants violated his Fourth Amendment rights by seizing his incoming mail without a valid penological interest. In *Hudson v. Palmer*, 468 U.S. 517 (1984), the Supreme Court considered and rejected a Fourth Amendment claim in which a prison official searched a prisoner's cell and destroyed some of his legal papers in the process. *Id.* at 519, 535. The prisoner claimed that the prison official's conduct constituted an unreasonable search and seizure of his property, in violation of the Fourth Amendment. *Id.* at 530. The Court disagreed.

First, the Court recognized that while prisoners are not beyond the reach of the Constitution, "curtailment of certain rights is necessary, as a practical matter, to accommodate a 'myriad of institutional needs and objectives' of prison facilities, . . . chief among which is internal security." *Id.* at 523–24 (internal citation omitted). The Court then determined that the official's

search of the prisoner's cell did not violate the Fourth Amendment because "society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell." *Id.* at 526. According to the Court, "[a] right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." *Id.* at 527–28.

For similar reasons, the Court held that "the Fourth Amendment does not protect against seizures in a prison cell [.]" *Id.* at 528 n.8. According to the Court, "[p]rison officials must be free to seize from cells any articles which, in their view, disserve legitimate institutional interests." *Id.*

In a recent case, *Hubbard v. Mann et al.*, No. 2:21-cv-55, 2021 WL 2845099 (W.D. Mich. Jul. 8, 2021), the Court addressed a situation in which a prisoner complained that the illegal confiscation of his mail violated his Fourt Amendment right to be free from unreasonable searches and seizures. *Id.* at *8. The Court concluded:

> Applying *Hudson* to Plaintiff's case, the Fourth Amendment did not prohibit Defendants from reading Plaintiff's legal mail and confiscating it where it raised concerns regarding institutional security. Moreover, to the extent that Plaintiff claims Defendants violated his constitutional rights by reading and confiscating his legal mail, this claim is properly analyzed under the First and Fourteenth Amendments, as discussed above. Therefore, Plaintiff does not state a Fourth Amendment claim for the seizure of his legal mail.

*Id.* at *9.

Applying *Hudson* and *Hubbard* to Plaintiff's case, the Fourth Amendment did not prohibit Defendants from searching and confiscating his mail because it appeared to contain contraband. Therefore, Plaintiff does not state a Fourth Amendment claim.

VI. **Due process**

Plaintiff claims that Defendants violated his due process rights when they confiscated his mail. The elements of a procedural due process claim are (1) a life, liberty, or

7

property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

As noted by the Court in *Hubbard*, Plaintiff does have a liberty interest in receiving his mail. *Hubbard*, 2021 WL 2845099, *7. However, in this case, it is clear that Plaintiff received due process of law. In all cases where a person stands to be deprived of his life, liberty or property, he is entitled to due process of law. This due process of law gives the person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false. The Due Process Clause does not guarantee that the procedure will produce a correct decision. "It must be remembered that even if a state decision does deprive an individual of life, [liberty], or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process." *Martinez v. California*, 444 U.S. 277, 284, n.9 (1980). "[T]he deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original). Further, an inmate has no right to counsel in disciplinary proceedings. *Wolff v. McDonnell*, 418 U.S. 539, 569-70 (1974); *Franklin v. Aycock*, 795 F.2d 1253, 1263 (6th Cir. 1986).

With regard to the mail containing the thumb drive, Plaintiff received an administrative hearing before Defendant Davidson. (ECF No. 1-2, PageID.40.) In the reasons for findings, Defendant Davidson stated:

> Per Policy, Prisoners are not allowed to receive or possess thumb drives. This applies to all circumstances including Legal Mail. Please see attached Policies regarding this matter. The Policies referenced are PD 05.03.118 (par. G), PD 04.07.112 (par. O) and PD 04.07.112 (par. DD).
>
> It was explained to Prisoner Young that his mail was copied and the copy was given to him as he claimed the mail needed immediate action on his part and we did not want to slow that down if it was in fact true. The original copy was initially going to be turned over to the Inspectors Office with the thumb drive for inspection as well. It was determined that wasn't necessary and the original was given to Prisoner Young as well. His legal mail was never read or skimmed.

(*Id.*)

Plaintiff also challenges the June 25, 2020, confiscation of legal mail that contained highlighted pages. Plaintiff complains that Defendant Parish told him she was going to shred some pages that were highlighted and that he would be given photocopies. (*Id.*, PageID.42.) In the investigation summary section of the step I grievance response, non-Defendant Sergeant McBride stated:

> PD 05.03.118 Paragraph JJ states in part "All physical contraband shall be confiscated prior to delivery to the prisoner." PD 05.03.118 Paragraph OO does state "mail which includes the use of crayons, non-graphite pencil, highlighter or other markers on the paper." Paragraph PP #4 states "Mail received directly from the following also shall not be rejected under Paragraph OO: 4. An attorney, a law firm, or a legal service organization conducting official business with the prisoner." Staff attempted to give the grievant multiple copies of his legal papers which he refused to accept or sign for. Grievant was told that his legal mail was copied and then destroyed, which led to the Administrative Assistant Mr. Mastaw contacting the sending party and having the originals overnighted to the facility. The grievant accepted the newly received paperwork on July 16, 2020 and this grievance is considered resolved.

(*Id.*) Plaintiff also attaches copies of letters from Attorney Kyle P. Konwinski, dated July 15, 2020, which indicated that he overnighted color copies of the pertinent documents, and that Plaintiff should contact him if he did not received the documents. (*Id.*, PageID.45.)

Because it is clear that Plaintiff received due process, his Fourteenth Amendment claims will be dismissed.

9

VII. **Retaliation**

Plaintiff claims that Defendants' mishandling of his mail violated his First Amendment right to be free from retaliation. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff fails to allege any specific facts showing that Defendants were motivated by a desire to retaliate against him. Temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004). Moreover,

> . . . *Muhammad* does not stand for the proposition that temporal proximity alone is sufficient to create an issue of fact as to retaliatory motive. In *Muhammad* the Sixth Circuit did not resolve the issue, but merely observed that "temporal proximity alone **may be** 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Id.* at 418 (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004) (emphasis added). Even if temporal proximity may in some cases create an issue of fact as to retaliatory motive, it would only be sufficient if the evidence was "significant enough."

10

> Plaintiff's conclusory and ambiguous evidence is not "significant enough" to create an issue of fact as to retaliatory motive.

*Brandon v. Bergh*, No. 2:08-cv-152, 2010 WL 188731, at *1 (W.D. Mich. Jan. 16, 2010).

Plaintiff appears to be claiming that because the mail at issue was legal mail, Defendants' seizure and destruction of some of his mail was in retaliation for Plaintiff's use of the legal system. However, nothing in Plaintiff's complaint indicates that the handling of his mail was the result of any improper motive. Instead, it appears that his mail was handled in accordance with MDOC policy, and that any errors in handling were the result of Defendants' misunderstanding of the policy.

Plaintiff also alleges that Defendant Frazier told him that he was making people angry by not signing off on the destruction of highlighted pages of legal mail. However, Plaintiff fails to allege that any adverse action was taken against him following this comment. In fact, as noted above, Defendant Mastaw eventually contacted Attorney Konwinski and had replacement original documents overnighted to Plaintiff. Therefore, Plaintiff's retaliation claims are properly dismissed.

VIII. **Access to the Courts**

Plaintiff claims that Defendants violated his First Amendment right of access to the courts. It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824–25. The right of access to the courts also prohibits prison officials from erecting

11

barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the

12

underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 415. In this case, it does not appear that Plaintiff suffered any actual injury to a nonfrivolous legal claim action. Therefore, Plaintiff's access to the courts claims are properly dismissed.

IX. **Handling of legal mail**

Finally, to the extent that Plaintiff is asserting a separate claim regarding the handling of his mail, the Court notes that a prisoner's incoming legal mail receives heightened protection under the First Amendment. *Sallier v. Brooks*, 343 F.3d 868, 873-74 (6th Cir. 2003). "[T]he opening of 'legal mail' should generally be in the inmate's presence in accordance with appropriately drafted and uniformly applied regulations." *Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir. 1996) (citing *Wolff v. McDonald*, 418 U.S. 539 (1974)). Plaintiff in this case does not allege that his legal mail was opened and inspected outside of his presence. Therefore, this claim is properly dismissed.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from

proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:  August 20, 2021                                      /s/ Hala Y. Jarbou
                                                             HALA Y. JARBOU
                                                             UNITED STATES DISTRICT JUDGE